IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SIERRA FOREST PRODUCTS, INC.,

        Plaintiff,

    v.

DIRK KEMPTHORNE, in his
official capacity as Secretary
of the Interior; UNITED STATES
DEPARTMENT OF THE INTERIOR; H.
DALE HALL, in his official
capacity as Director of the
Fish and Wildlife Service; and
UNITED STATES FISH AND WILDLIFE
SERVICE,

        Defendants,

    and

CENTER FOR BIOLOGICAL
DIVERSITY; SIERRA NEVADA FOREST
PROTECTION CAMPAIGN; SIERRA
CLUB; and NATURAL RESOURCES
DEFENSE COUNCIL,

        Defendant-Intervenors.

_____/

No. 2:07-CV-00060 JAM GGH

ORDER RE MOTION AND CROSS
MOTIONS FOR SUMMARY JUDGMENT

1

I.  INTRODUCTION

Sierra Forest Products, Inc. ("Sierra") brought this action for injunctive and declaratory relief pursuant to the citizen-suit provision of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, challenging the United States Fish and Wildlife Service's ("Service") finding that listing the West Coast distinct population segment ("DPS") of the Pacific fisher ("fisher") as endangered under the ESA is warranted, but precluded by higher priority listing actions.[1]  Center for Biological Diversity, Sierra Nevada Forest Protection Campaign, Sierra Club, and Natural Resources Defense Council (collectively "Intervenors") intervened as defendants.  Sierra now moves for summary judgment.  FWS and Intervenors (collectively "Defendants") oppose the motion and filed cross-motions for summary judgment.  For the reasons set forth below, Defendants'

---

[1] The defendants in this action are: Dirk Kempthorne, Secretary of the Interior; the United States Department of the Interior; H. Dale Hall, Director of the Fish and Wildlife Service; and the United States Fish and Wildlife Service (collectively "FWS").

cross-motions are GRANTED in part and DENIED in part, and Sierra's motion is DENIED.[2]

///

///

## II. UNDISPUTED FACTS

On December 5, 2000, the Center for Biological Diversity petitioned the Service to list a DPS of the fisher (*Martes pennant*) in its West Coast range, including portions of California, Oregon, and Washington ("West Coast"), as endangered under the ESA, 16 U.S.C. § 1531 *et seq*.  In July 2003, the Service made a ninety-day finding that the petition presented substantial information indicating that listing of the West Coast DPS of the fisher may be warranted and initiated a twelve-month status review.  On April 8, 2004, the Service determined that the listing of the West Coast DPS of the fisher was warranted, but precluded by higher priority listing actions to amend the Lists of Endangered and Threatened Wildlife and Plants, and placed the fisher on the Candidate Species List.

## III. PROCEDURAL BACKGROUND

On January 10, 2007, Sierra brought this action seeking injunctive and declaratory relief pursuant to the citizen-suit provision of the ESA and the APA challenging the Service's

[2] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 78-230(h).

3

decision to place the fisher on the Candidate Species List.

Docket at 1.[3]  On February 28, 2007, Intervenors filed a motion

for leave to intervene as defendants.  Docket at 8.  On June 16,

2007, this Court granted the motion to intervene.  Docket at 22.

On September 11, 2007, Sierra filed its motion for summary

judgment seeking to vacate the Service's "warranted but

precluded" finding on the basis that the Service failed to

follow statutory law in placing the fisher on the Candidate

Species List.  Docket at 30.  Specifically, Sierra maintains

that the Service violated the ESA and the APA by failing to

specify whether the West Coast DPS of the fisher is a DPS of a

species or a DPS of a subspecies.  Docket at 30.  Sierra argues

that an express finding that the West Coast DPS of the fisher is

a DPS of a species, not a DPS of a subspecies, is critical

because the ESA does not authorize the listing of a DPS of a

subspecies.  Docket at 30.  Defendants oppose Sierra's motion

and filed cross-motions for summary judgment.  Docket at 31-32.

Defendants' cross-motions seek summary judgment on the basis

---

[3] Sierra owns a mill located in Terra Bella, in Tulare
County.  Compl. ¶ 6.  Sierra alleges that it "has been a party
to timber sale contracts on National Forest lands that have been
blocked in part due to their anticipated effect on the fisher,
and will likely be a party to future timber sale contracts that
will affect the fisher."  Id. ¶ 23.  Sierra further alleges that
the fisher's listing on the Candidate Species List makes it much
more difficult for any given proposed timber harvest and sale
(including those to which Sierra Forest is a party) to proceed.
Id. ¶ 26.

that this Court lacks subject matter jurisdiction to review the Service's "warranted but precluded" finding because neither the ESA nor the APA provide for interlocutory judicial review of the "warranted" aspect of a "warranted but precluded" finding. Docket at 31-32.  Intervenors also seek summary judgment on the basis that Sierra lacks standing under Article III of the constitution.  Docket at 32.  Alternatively, Defendants seek summary judgment on the basis that the Service's "warranted but precluded" finding should not be set aside because it was neither arbitrary nor capricious.  Docket at 31-32.  These arguments are discussed individually below.

IV. OPINION

A.   Legal Standards

    1. Summary Judgment

    Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment, however, is not appropriate if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  In reviewing an administrative agency decision, summary judgment is the

appropriate mechanism for deciding the legal question of whether the administrative record permitted the agency to make the decision it did.  City & County of San Francisco v. United States, 130 F.3d 873, 877 (9th Cir. 1997).

    2. Review of Agency Action

    "Because ESA contains no internal standard of review, section 706 of the Administrative Procedure Act, 5 U.S.C. § 706, governs review of the Secretary's actions." Village of False Pass v. Clark, 733 F.2d 605, 609 (9th Cir. 1984).  Under the APA, agency action may only be set aside if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Friends of the Earth v. Hintz, 800 F.2d 822, 831 (9th Cir. 1986); Northwest Ecosystem Alliance v. United States Fish and Wildlife Service, 475 F.3d 1136, 1140 (9th Cir. 2007).  This standard of review is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision. Northwest Ecosystem, 475 F.3d at 1140.  In making this determination, while the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment, and while this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. Hintz, 800 F.2d at 831.  "Within this narrow review, [the court] cannot substitute [its] judgment for

that of the [agency], but instead must uphold the agency

decisions so long as the agencies have 'considered the relevant

factors and articulated a rational connection between the facts

found and the choice made.' " <u>Selkirk Conservation Alliance v.</u>

<u>Forsgren</u>, 336 F.3d 944, 953-54 (9th Cir. 2003).  "An agency

action must be reversed when the agency has 'relied on factors

which Congress has not intended it to consider, entirely failed

to consider an important aspect of the problem, offered an

explanation for its decision that runs counter to the evidence

before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency

expertise.' " <u>National Ass'n of Home Builders v. Norton</u>, 340

F.3d 835, 841 (9th Cir. 2003).  Review of an agency decision is

based on the administrative record and the basis for the

agency's decision must come from the record.  <u>Id.</u>

B.   Subject Matter Jurisdiction

     Defendants argue that this Court lacks subject matter

jurisdiction to review the Service's "warranted but precluded"

finding because neither the ESA nor the APA provide for

interlocutory judicial review of the "warranted" aspect of a

"warranted but precluded" finding.  Sierra argues that judicial

review of the Service's "warranted but precluded" finding is

appropriate because the plain language of the ESA provides that

"warranted but precluded" findings are subject to judicial review.  The Court finds Sierra's argument to be persuasive.

The ESA provides that "any person may commence a civil suit on his own behalf . . . against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary to the Secretary."  16 U.S.C. § 1540(g)(1)(C).  The ESA mandates that the Secretary "shall make determinations" regarding petitions "solely on the basis of the best scientific and commercial evidence available".  See Ass'n of California Water Agencies v. Evans, 386 F.3d 879, 883-84 (9th Cir. 2004); Fed'n of Fly Fishers v. Daley, 200 F. Supp 2d 1181, 1186 (N.D. Cal. 2002).  Thus, the Secretary's failure to make a determination based on the best scientific and commercial evidence available creates a cause of action that falls within the citizen-suit provision of the ESA.  See Evans, 386 F.3d at 883-84 ("It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking.").  In this case, Sierra contends that the Service failed to follow the procedural requirements of the ESA in listing the West Coast DPS of the fisher on the Candidate Species List by failing to provide some reasoning for its determination that the West Coast DPS of the fisher constitutes a DPS of a species. Sierra's cause

of action, therefore, falls within the citizen-suit provision of the ESA, which allows for a civil cause of action when "there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary to the Secretary."  16 U.S.C. § 1540(g)(1)(C).[4]

Under Section 4 of the ESA, the Secretary of Interior is generally responsible for determining which species, both domestic and foreign, should be listed as endangered or threatened.  16 U.S.C. § 1533(a)(1).[5]  The ESA permits interested persons to petition the Secretary to add or remove species from the threatened and endangered species lists.  16 U.S.C. § 1533(b)(3).  "To the maximum extent practicable, within 90 days after receiving the petition of an interested person . . . the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  16 U.S.C. § 1533(b)(3)(A).  Within twelve months after receiving a petition that presents substantial information indicating the

---

[4] To the extent that Sierra argues that subject matter jurisdiction is appropriate under the APA, the Court disagrees. If a plaintiff may bring suit against a responsible federal agency under a citizen-suit provision of a particular statute, then he may not bring suit under the APA to remedy conduct already reviewable by the citizen-suit provision.  Brem-Air Disposal v. Cohen, 156 F.3d 1002, 1005 (9th Cir. 1998).

[5] The Secretary of the Interior administers the ESA through the Service.  See 50 C.F.R. § 402.01(b).

petition action may be warranted, the Secretary must make one of
the following findings: (i) the petitioned action is actually
not warranted; (ii) the petitioned action is warranted in which
case the Secretary shall "promptly" published a proposed
regulation; or (iii) the petitioned action is warranted but "the
immediate proposal and timely promulgation of a final regulation
implementing the petitioned action . . . is precluded by pending
proposals to determine whether any species is an endangered
species or a threatened species," and "expeditious progress is
being made to add qualified species" to the list "in which case
the Secretary shall promptly publish such finding in the Federal
Register, together with a description and evaluation of the
reasons and data on which such finding is based."  16 U.S.C. §
1533(b)(3)(B).

    In the present case, the Court finds that because the
Service determined that the petition to list the West Coast DPS
of the fisher as endangered under the ESA is "warranted but
precluded," the plain language of the ESA provides that this
finding is subject to judicial review.  See 16 U.S.C. §
1533(b)(3)(C)(ii) (providing that "warranted but precluded"
findings are subject to judicial review).  Defendants maintain
that such an interpretation is inconsistent with the overall
structure, intent and legislative history of the ESA.
Specifically, Defendants argue that because the plain language

of the ESA expressly prohibits review of a warranted finding, it would be incongruous to permit judicial review of the warranted aspect of a "warranted but precluded" finding.   Defendants argue that a reasonable interpretation of the ESA as a whole compels the conclusion that only the "precluded" aspect of a "warranted but precluded" finding is subject to judicial review.   In support of their position, Defendants point to legislative history, which, according to Defendants, bolsters their contention that judicial review of a "warranted but precluded" finding is limited to the Service's "preclusion" findings since the House Conference Report focuses exclusively on judicial review of delay.   <u>See</u> H. Conf. Rep. No. 97-835, at 21-22 (1982), <i>reprinted in</i> 1982 U.S.C.C.A.N. 2860, 2862-2863 (discussing the 1982 Amendments to the ESA).   The Court acknowledges that Defendants' argument has some merit. However, it declines to adopt it because doing so would require the Court to ignore the plain and unambiguous meaning of the statute.   <u>See</u> <u>Arizona State Board For Charter Schools v. United States Department of Education</u>, 464 F.3d 1003, 1007 (9th Cir. 2006) (if the meaning of a statute is plain and unambiguous it is controlling).   Courts are not vested with the power to rewrite statutes, but rather must construe what Congress has written.   <u>Id.</u>   A decision to rearrange or rewrite a statute falls within the legislative, not the judicial prerogative.   <u>Id.</u>   If Congress wanted to limit

judicial review of a "warranted but precluded" finding to the preclusion findings, Congress could have done so.  But it did not, and "courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  <u>Connecticut Nat'l Bank v. Germain</u>, 503 U.S. 249, 253-54 (1992).  Accordingly, because the plain and unambiguous language of the ESA provides for judicial review of a "warranted but precluded" finding, and because Defendants did not cite to controlling authority compelling a contrary conclusion, the Court concludes that it has subject matter jurisdiction over this action.

C.   Article III Standing

       Intervenors argue that Sierra lacks standing under Article III to challenge the Service's "warranted but precluded" finding because Sierra has not suffered any concrete injury in fact as the result of this determination.  Sierra argues that it has standing to challenge the Service's "warranted but precluded" finding because the Service failed to follow the procedural requirements of the ESA in listing the West Coast DPS of the fisher on the Candidate Species List, thereby causing harm to existing and future timber-harvesting contracts.  The Court finds Sierra's argument to be persuasive.

       To establish standing under the constitution a plaintiff must show: (1) that it has suffered an "injury in fact"-an

invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not "conjectural" or "hypothetical"; (2) a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; (3) that it is "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The party invoking federal jurisdiction bears the burden of establishing these elements in order to meet the "irreducible constitutional minimum of standing."  Id.

Article III standing is not fundamentally changed by the fact that a petitioner asserts a procedural, rather than a substantive injury.  Nuclear Information and Resource Service v. Nuclear Regulatory Com'n., 457 F.3d 941, 949 (9th Cir. 2006).  In a procedural injury case: to show a cognizable injury in fact, a plaintiff must allege that (1) the agency violated certain procedural rules; (2) these rules protect a plaintiff's concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests.  Id.  To establish Article III standing, a plaintiff must also show causation and redressability; however, once a plaintiff has established injury in fact, the causation and redressability

requirements are relaxed insofar as a plaintiff need only establish a reasonable probability that the challenged action will threaten their concrete interest.  Id. at 950.  "When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant."  Massachusetts v. EPA, 127 S.Ct. 1438, 1453 (2007); see also Sugar Cane Growers Cooperative of Florida v. Veneman, 289 F.3d 89, 94-95 (D.C. Cir. 2002)  ("A [litigant] who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered.  All that is necessary is to show that the procedural step was connected to the substantive result").

In the present case, Sierra claims that the Service failed to follow the procedural requirements of the ESA in listing the West Coast DPS of the fisher on the Candidate Species List. Therefore, its claim falls within the procedural standing analysis. In order to establish standing, Sierra needs to show that the procedures in question were designed to protect a threatened concrete interest of Sierra's, and that it is reasonably probable that the challenged action will threaten this concrete interest.  Sierra's concrete interest is clear: Economic injury from interference with timber-harvesting

contracts.  Specifically, Sierra contends that the listing of the West Coast DPS of the fisher on the Candidate Species List has interfered with existing and future timber contracts and a favorable decision from this Court may ultimately result in the removal of the fisher from the list, thereby making it easier for Sierra to enter into and carry out timber-harvesting contracts.  Decl. of Kent Duysen ¶¶ 10, 13.  Given that it is reasonably probable that the Service's "warranted but precluded" finding threatens Sierra's concrete interest in harvesting timber, the Court finds that Sierra has alleged a sufficient injury in fact to seek redress of the alleged procedural injury.[6] Accordingly, the Court concludes that Sierra has standing under Article III to maintain this action.

D.    Sierra's Challenge to the Warranted but Precluded Finding

      Defendants argue that the Service's "warranted but precluded" finding should not be set aside because it was neither arbitrary nor capricious.  Sierra argues that the

_____

      [6] In Sierra Club v. Bosworth, 465 F.Supp.2d 931, 940-41 (N.D. Cal. 2006), the district court entered a permanent injunction against the continuation (or commencement) of several timber projects (halting logging activity by Sierra) because the Forest Service failed to conduct a proper "hard look" at the significant new information regarding the impacts of the timber projects on the fisher, namely, among other things, the Service's finding that the fisher meets the criteria to be listed as an endangered species under the ESA.  The Court finds the circumstances in Bosworth to be illustrative of how the Service's "warranted but precluded" finding threatens Sierra's concrete interest in harvesting timber.

Service's "warranted but precluded" finding should be vacated because the Service failed to follow the procedural requirements of the ESA by failing to specify whether the West Coast DPS of the fisher is a DPS of a species or a DPS of a subspecies.  The Court agrees with Defendants' arguments.

An evaluation of the administrative record in this case reveals that the Service provided sufficient reasoning for its determination that the West Coast fisher is a DPS of a species. In fact, a review of the record reveals that the Service addressed the taxonomy of the fisher[7] and determined that the West Coast DPS of the fisher is a DPS of a species inasmuch as the Service repeatedly referred to the West Coast DPS of the fisher as a species throughout the record.  See e.g., AR at 364-366, 419-420, 555-556, 646, 6848-6850.  Accordingly, because the record contains scientific support for the Service's determination that the West Coast DPS of the fisher is a DPS of a species, the Court concludes that the Service's determination in this regard was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Furthermore, even assuming for the sake of argument that the

---

[7] Although the administrative record indicates that some authorities have recognized the fisher as consisting of three subspecies, the record also indicates that other authorities have determined that recognition of separate subspecies is not warranted.  Administrative Record ("AR") at 342, 548, 12772-12773, 15311.

Service had found the West Coast DPS of the fisher to be a DPS of a subspecies, this would have been permissible agency action insofar as the Service is authorized under the ESA to list a DPS of a subspecies on the Candidate Species List.  See Center for Biological Diversity v. United States Fish & Wildlife Service, 2008 WL 1776455, *2 n. 5 (9th Cir. 2008) (concluding that the Service's interpretation of the ESA to allow listing of a DPS of a subspecies is entitled to deference because it is a permissible construction of the ESA).  Accordingly, summary judgment is granted in favor of Defendants, and against Sierra on this issue.

V. ORDER

For the reasons set forth above, Defendants' cross-motions for summary judgment are GRANTED in part and DENIED in part, and Sierra's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated:  June 6, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE